670 So.2d 493 (1996)
STATE of Louisiana, Plaintiff-Respondent,
v.
Michael A. CLARK and Brenda S. Clark, et al., Defendants-Applicants.
No. W 94-598.
Court of Appeal of Louisiana, Third Circuit.
February 21, 1996.
Rehearing Denied April 24, 1996.
*495 Ronald E. Dauterive, Lafayette, Donald Whitehead North, Carol Ann Jewell, Asst. Atty. Gen., Baton Rouge, for State.
Alfred Frem Boustany, II, Vincent Joseph Saitta, Lafayette, Timothy Allison Meche, New Orleans, for Michael & Brenda Clark et al.
Alfred Frem Boustany, II, Lafayette, for Arvin Jones.
Michael David Skinner, Lafayette, for Jason John Foret.
Alfred Frem Boustany, II, Lafayette, for Larry Catalon.
Marilyn Michele Fournet, Baton Rouge, Thomas L. Lorenzi, Lake Charles, Arthur A. Lemann, III, New Orleans, J. Michael Small, Alexandria, for La. Ass'n of Criminal Defense Lawyers.
Ellis Paul Adams Jr., Baton Rouge, John J. Williams, Covington, Martin K. Maley, Baton Rouge, for La. Ass'n of Dist. Attys.
Before YELVERTON, THIBODEAUX, and SULLIVAN, JJ.
YELVERTON, Judge.
A writ was granted in these four consolidated cases involving the application of the Louisiana Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989 (Forfeiture Act) as contained in La.R.S. 40:2601-2622. The State filed forfeiture proceedings in Lafayette Parish in four separate actions against Brenda and Michael Clark, Arvin Jones, Jason Foret, and Larry Clayton. Items seized from the Clarks were a truck, their home, several weapons, and $1,320 in U.S. currency. Vehicles were seized from the other claimants. All claimants filed motions to have the Forfeiture Act declared unconstitutional. The actions were consolidated only for the hearing on these constitutional issues. The judges of the Fifteenth Judicial District Court were *496 recused. An ad hoc judge was appointed to hear the constitutionality issues.
The ad hoc trial judge found that the Forfeiture Act is constitutional. The claimants filed writ applications to this court to have the judgment reviewed.[1] We have carefully considered the consolidated matter. We affirm the ruling of the trial court.
The claimants attack the statute on several grounds. Mainly, they allege that it permits the taking of property without due process because it unconstitutionally shifts the burden of proof. They also contend that it unconstitutionally fails to provide the property owner with a fair and impartial fact finder to consider his case, discourages and deprives a citizen of the right to go to court to get his property back, and does not sufficiently define the property which is subject to forfeiture.
Statutes are presumed constitutional, and the party challenging a statute's validity must articulate a particular constitutional provision that limits the legislature's powers. When a constitutional challenge is made, the question is not whether the constitution empowers, but whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. Chamberlain v. State Through DOTD, 624 So.2d 874 (La.1993). In an attack upon a legislative act as falling within an exception to the legislature's otherwise plenary power, an opponent must establish clearly and convincingly that the constitutional aim was to deny to the legislature the power to enact the legislation. Polk v. Edwards, 626 So.2d 1128 (La.1993).
The Forfeiture Act was enacted pursuant to the provisions of Section 4 of Article I of the Constitution of Louisiana. La.R.S. 40:2604 of the Forfeiture Act defines property subject to seizure and forfeiture as contraband, derivative contraband, or property related to contraband. La.R.S. 40:2605 contains the exemptions from forfeiture for innocent owners or interest holders. Heading the list is the exemption that applies when the owner or interest holder is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur. La.R.S. 40:2605(1). All proceedings are to be governed by provisions of the Louisiana Code of Civil Procedure, according to La. R.S. 40:2611(K). The statute governing in rem proceedings is La.R.S. 40:2612, and it permits an owner or an interest holder in seized property to file a claim, accompanied by a cost bond of 10% of the estimated value of the property, or $2,500, whichever is greater, not to exceed $250,000. If the claimant qualifies to proceed in forma pauperis, no bond is required. La.R.S. 40:2612(E). Civil in personam proceedings are also authorized. La.R.S. 40:2613. This must be based on alleged conduct giving rise to forfeiture. La.R.S. 40:2613(A)(1). A claimant who obtains the return of property that has been seized for forfeiture may recover attorney fees from the seizing agency plus all costs and the expenses of preserving the property. La.R.S. 40:2611(L). La.R.S. 40:2621 provides that the act be liberally construed to effectuate its remedial purpose. The provisions of the act protect against the arbitrary exercise of power.

DUE PROCESS
La. Const. art. I, § 2 provides that "[n]o person shall be deprived of life, liberty, *497 or property, except by due process of law." The claimants argue that La.R.S. 40:2612(G) of the Forfeiture Act violates the procedural due process guarantee of Article I, § 2 because it relieves the state of the burden of proof and places it upon the property owner. La.R.S. 40:2612(G) reads in part as follows:
The district attorney shall have the initial burden of showing the existence of probable cause for forfeiture of the property. If the state shows probable cause, the claimant has the burden of showing by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture.
Louisiana's Forfeiture Act was patterned on the federal act. The claimants ask us to declare the act unconstitutional under both constitutions, but concede that the federal provision has been declared constitutional by the federal courts. They nevertheless predict "that when presented the proper case the United States Supreme Court will eventually conclude that the burden shifting scheme violates the procedural due process clause of the Federal Constitution." We can perceive no trend in that direction in the latest expression of the Supreme Court on the subject of forfeiture, Libretti v. United States, ___ U.S.___, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). There is no reason why we should reconsider whether the Forfeiture Act meets the test of federal constitutionality. As of now it clearly does. The claimants primarily rely upon the due process protection of Article I, § 2. We will confine our opinion to Louisiana law.
In State v. Manuel, 426 So.2d 140 (La. 1983) our supreme court said that constitutional review under the federal Fourteenth and Fifth amendments is less exacting than a Louisiana constitutional inspection because of the different, more detailed safeguards for property rights contained in our state charter. The reference was to La. Const. art. I, § 4, dealing with the right to property. This article and section, as adopted in 1974 and before its 1989 amendment, read as follows:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
Pursuant to Act 840 of 1989, a proposal to amend La. Const. art. I, § 4 was submitted to the electors of the State of Louisiana and ratified by them on October 7, 1989. The amendment eliminated the language "[p]ersonal effects, other than contraband, shall never be taken" from the end of the second paragraph and added a new paragraph as follows:
Personal effects shall never be taken. But the following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband drugs; property furnished or intended to be furnished in exchange for contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above described property has been rendered unavailable.
*498 In the same year that this amendment took place, the legislature, by Act 375, passed the Forfeiture Act under consideration now. It became effective December 31, 1989, at midnight.
In support of their contention that the shifting of the burden of proof is an unconstitutional denial of due process, the claimants rely entirely on State v. Spooner, 520 So.2d 336 (La.1988). Spooner was decided before the above-quoted constitutional amendment was approved and before the passage of the Forfeiture Act under consideration now. Spooner concerned another forfeiture statute, La.R.S. 32:1550, and a statutory presumption contained in that statute. The statutory presumption required the claimant to prove by clear and convincing evidence that money found in close proximity to illegal narcotics was not forfeitable derivative contraband. The supreme court in Spooner ruled that this statutory provision created an unconstitutional mandatory presumption in violation of the Louisiana constitutional provision on property rights, Article I, § 4, and the federal and state constitutional rights to due process of law. The Spooner case concluded that forfeiture of money was permissible, but the state had to prove that the money was derivative contraband.
The central issue in Spooner was whether the property owner could be required to prove in a forfeiture proceeding that money found on his person at the time of his arrest was not contraband. In concluding that the property owner could not be required to disprove a presumption that his property was contraband, but that, instead, the state had to bear the burden of proving that the seized property was contraband, the supreme court relied on the protections which the 1974 Louisiana Constitution extended to the right to own and control private property. The court concluded that requiring that the state have the burden of proof as to derivative contraband was necessary to avoid infringement upon constitutional due process and private property rights. The court referred to the traditional disfavor in which forfeitures have been regarded under Louisiana law. Defining a forfeiture proceeding as "by nature an attempt to deprive the defendant of his property as a punishment," the court held that the property owner was entitled to substantially the same protection that an accused is entitled to in any criminal case. Thus, the court said, the burden of proving that the defendant's property was derivative contraband must be on the state.
As this court said in State v. 77,014.00 Dollars, 607 So.2d 576 (La.App. 3 Cir.1992), writ denied, 612 So.2d 61 (La.1993), the response to Spooner was the enactment of Louisiana's present forfeiture law. More importantly, the response to Spooner was an amendment to the Louisiana Constitution having to do with the right to own and control private property. This amendment permitted the enactment of the forfeiture law.
Forfeiture of contraband drug property in a civil proceeding has now been elevated to constitutional dignity. No longer is a generic distinction between contraband and derivative contraband relevant because Article I, § 4 now says that the property which may be forfeited includes both. The tradition of looking with disfavor upon forfeitures is ended by our present constitution which looks with favor upon forfeiture of drugs and property that is drug-tainted as described in Article I, § 4. We do not need to search for a historical basis (such as deodand) for forfeiture of drug contraband in Louisiana; forfeiture of drug contraband is now constitutionalized.
The 1974 constitution fixed the right to acquire, own, control, use, enjoy, protect, and dispose of private property but made it subject to reasonable statutory restrictions and the reasonable exercise of the police power. "The background of the provision indicates an understanding that the statutory limitations and police power regulations are to be given a broad ambit." Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.Law Review 1, 12 (1974). Since 1989, the constitution itself, by allowing the forfeiture and disposition in a civil proceeding of drug-tainted property, enlarges that ambit by establishing a further limitation on the right to property. Prior to 1989, whether forfeiture laws were to be examined in the context of a criminal proceeding and *499 were a reasonable exercise of the police power were debatable questions. The 1989 amendment removes any doubt about either question. Forfeiture is a civil proceeding, and the constitutional right to property provision is not a limitation on the legislature's power to enact legislation for the forfeiture of contraband drugs and drug-tainted property.
Giving constitutional preeminence to a public need for the taking of private property is not new to the constitution. Property needed for a public purpose has always been a limitation on private property rights recognized by Article I, § 4. The state may take private property for a public purpose. The present expropriation paragraph of Article I, § 4 was adopted in 1974. Louisiana's original "quick taking" statute, La.R.S. 48:441-460, was also enacted in 1974. An examination of these statutes shows that the "quick taking" law accords owners of property no more "due process" than the Forfeiture Act. The "quick taking" statute allows the Department of Transportation and Development to acquire property by petition stating the public purpose of the taking. The petition needs to be certified by the Secretary and/or Assistant Secretary of the DOTD, the chief engineer or his principal assistant, and the director of preconstruction or his chief assistant. If these certificates are attached to the petition, and there is likewise presented a deposit of value based on estimates and approved by certain personnel in the DOTD, the trial judge in the parish where the petition is filed must issue an ex parte order declaring that the property has been taken, and when the deposit is made, title at that moment vests in the state. La.R.S. 48:445. Thereafter, the owner has twenty days to contest the validity of the taking on the ground that the property was not expropriated for a public purpose. The failure to contest the validity of the taking in twenty days constitutes a waiver of that defense. La.R.S. 48:447. If the property owner elects to contest the taking, the necessity of the taking can be attacked only by proving that the state was arbitrary, capricious, and in bad faith, as to which the property owner has the burden of proof. Red River Waterway Com'n v. Fredericks, 566 So.2d 79 (La.1990). The burden of proof is by clear and convincing evidence. Dept. of Transp. & Development v. Aswell, 517 So.2d 894 (La.App. 3 Cir.1987).
Much has been said about Article I, § 4 of the Constitution of 1974 and its purpose in expropriation cases to compensate the owner to the full extent of his loss. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). Yet, the entire burden of proving entitlement to any compensation beyond that deposited into the registry of the court by the expropriating entity rests on the landowner to establish his claim by a preponderance of the evidence. Id. Although the property owner's right to compensation and the extent of the right is constitutionally based, this burden of proof does not offend due process.
The power of the state to take property for public purposes by expropriation and the power to take by forfeiture drugs or drug-related property are now both constitutionally recognized limitations on the right to property. It has never been contended that the burden of proof requirements in the taking of property by expropriation for public purposes violate due process. The burden of proof requirements for the taking of drug-tainted property by forfeiture under the Forfeiture Act do not violate due process. It is not a distinction to say that expropriation is less a taking because the state must pay in advance for the property. Forfeiture is no more a taking than is expropriation. The distinction is, there is no compensable property right in contraband drugs or drug-related property. We will further explain this distinction.
In Spooner Justice Cole concurred in the holding that the ultimate burden of proof was on the state. Justice Cole applied the factors listed in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under Eldridge, three separate factors must be weighed in determining the validity of a procedure which can deprive a person of property: (1) the governmental interest served by the challenged procedure; (2) the individual interest served by the challenged procedure; and (3) the risk of an erroneous deprivation *500 and the probable value of additional safeguards. The majority opinion in Spooner had already applied those factors and concluded that the risk of an erroneous deprivation of derivative contraband was intolerably great and that the burden of proof could not shift. Justice Cole, however, joined by two justices who are still on the supreme court, concurred, believing that none of the three factors were so weighty as to tip the scales in Louisiana. However, the concurring opinion concluded that the extra protection of the Louisiana constitution guaranteeing rights of ownership of private property tipped the scales against the constitutionality of the forfeiture law under consideration in Spooner. Justice Cole further explained his concurrence in the unconstitutionality of shifting the burden of proof to the claimant as based on the language in Article I, § 4 as it then read, that "[p]ersonal effects, other than contraband, shall never be taken." He wrote:
Since cash is not `per se' contraband, but rather is a `personal effect' until the state shows it to be `derivative contraband,' the risk of error in any procedure which classifies cash as contraband must be very small in order to comply with Article I, Section 4's mandate that personal effects, other than contraband, never be taken. The presumption, concommittant [concomitant] with the shifting of the burden to the claimant to rebut it with clear and convincing evidence, is unconstitutional under the
Louisiana Constitution.

Spooner, 520 So.2d at 365.
This observation by Justice Cole was consistent with the following analysis of what went on during the drafting of the Constitution of 1974.
Property considered as `contraband' is exempted from the requirement that personal effects not be taken. The record provides no special definition of contraband. The term is used in the ordinary sense of property the possession of which is forbidden by law. The historical evolution of the term indicates that no compensation need be given when goods classed as contraband are taken. The government's power to classify items as contraband and to take them without compensation is of course limited by the provisions that the right to own property is subject to `reasonable' restrictions and that property cannot be taken without due process. (footnote omitted)
Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.Law Review 1, 19-20 (1974).
The 1989 amendment to Article I, § 4 enjoins the taking of personal effects. However, contraband drugs is firmly installed as an exception, and the description of forfeitable property is further enlarged to include drug-tainted property, or derivative contraband.
Not only does the constitution now put drug-tainted property, or derivative contraband, in the same category as the contraband itself, but by declaring that the forfeit be by means of a civil proceeding, the constitution now eliminates the notion, adopted in Spooner, that the range of process due a defendant in a forfeiture proceeding must be similar to that to which the accused is entitled in any criminal case.
The 1989 amendment to Article I, § 4 establishes that forfeiture cases are not to be approached in the context of criminal law and in reliance upon criminal precepts, but rather in the context of property law, just as Justice Cole and the two justices concurring with him stated in Spooner. The question of whether forfeiture in Louisiana is civil or criminal is no longer left to statutory or jurisprudential construction; that it is essentially civil (as a limitation on the right to property) is now of constitutional stature, and it is subject to the procedural rules governing civil matters.
That forfeiture is punishment, is a common sense fact unaffected by the constitutional amendment. To the extent that in a given case the punishment feature might trigger the protections of certain criminal constitutional guarantees such as double jeopardy, excessive fines, and perhaps other guarantees, criminal due process considerations are appropriate in evaluating the extent of the forfeit under the Forfeiture Act. But it is not appropriate to subordinate forfeiture to every constitutional provision that deals with criminal rights. For example, La. *501 Const. art. I, § 16 cannot be given greater constitutional weight than Article I, § 4 simply because forfeiture of drug-tainted property might reflect on a person's good name.
The amendment has now placed into a constitutional context the power of the State to take contraband or drug-tainted property without compensation and in a civil proceeding. It does so by removing the restriction on the legislature's power to authorize forfeiture, a restriction which Spooner found to be implicit in the right to property of Article I, § 4. The burden of proof procedures provided by the Forfeiture Act do not violate due process.

A FAIR AND IMPARTIAL TRIBUNAL
Another essentially due process argument is that the Forfeiture Act does not give claimants a fair and impartial tribunal to hear their case. This argument is two-pronged, the first based on the denial of a jury trial and the second because a share of the forfeited proceeds goes to the Criminal Court Fund which is used to defray the cost of operating the courts. We will discuss these two prongs separately.
La.R.S. 40:2612(G) of the Forfeiture Act provides that forfeiture shall be determined by the court alone. Claimants allege that this provision unconstitutionally denies a property owner the right to a jury trial in a forfeiture case.
The Seventh Amendment's right to trial by jury in civil cases has not been extended to the states through the Fourteenth Amendment. Parker v. Rowan Companies, Inc., 599 So.2d 296 (La.1992), cert. denied, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992). A denial of a jury trial in a state court civil proceeding does not violate the due process clause. Id. Therefore, it is within the province of the states to establish their own rules for the availability of jury trials. Id.
As recognized before, Article I, § 4 now provides that a forfeiture proceeding may be a civil proceeding. Also, La.R.S. 40:2611(K) provides the general rule that forfeiture proceedings shall be governed by the provisions of the Louisiana Code of Civil Procedure. Pursuant to La.Code Civ.P. art. 1732(7), a trial by jury shall not be available in cases where a jury trial is specifically denied by law. The denial of a jury trial in a civil forfeiture proceeding does not violate the constitution.
Claimants argue that the allocation of the forfeited proceeds pursuant to La.R.S. 40:2616(B) deprives the property owner of an impartial tribunal because after payment of certain interests, 20% of the forfeitures goes to the criminal court fund of the district court. They point out that pursuant to La. R.S. 15:571.11 funds in the criminal court fund can be used for expenses related to the judges of the criminal courts. Evidence was adduced that the criminal court fund of Lafayette Parish is not sufficient to operate the parish's criminal justice system, and has to be annually supplemented out of the parish general fund. This is the basis on which the claimants contend that there is a natural incentive on the part of judges to see to it that the fund is self-sufficient, and that this operates as a partisan interest which conflicts with the judicial position of impartiality.
We find no merit to this argument. Salaries of judges are fixed by law and are paid out of funds annually appropriated for that purpose by the legislature. The day-to-day expenses of operating the courts are paid by public funds and inure to the benefit of judges individually no more so than to the benefit of every citizen of the state. Under La.R.S. 15:571.11 fines in criminal cases, as well as forfeitures in these civil cases, go into the criminal court fund.
A judge is presumed to be impartial. State v. Collins, 288 So.2d 602 (La.1974). The burden of establishing a disqualifying interest rests on the party making the assertion. Schweiker v. McClure, 456 U.S. 188, 196, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982).
The chance that a trial judge will benefit from this scheme is too remote to warrant a presumption of bias. The trial judges are not responsible for the financial condition of the criminal courts. Also, before any money is deposited into the criminal court fund, it must first be used to satisfy any security *502 interest in the property being forfeited and payment of the expenses of the proceedings for forfeiture and sale. La.R.S. 40:2616(B). Claimants are not denied a fair and impartial hearing by the allocation of proceeds scheme.

OTHER ARGUMENTS
The claimants' remaining attacks are leveled at equal protection, vagueness, the ex post facto principle, and access to courts. We find no merit to these attacks.
The Forfeiture Act affects alike all persons and interests similarly situated. See Detraz v. Fontana, 416 So.2d 1291 (La.1982). The state's objective is to protect its citizens from the dangers of drugs. State v. Brown, 94-1290 (La. 1/17/95); 648 So.2d 872.
The statute's definition of conduct giving rise to forfeiture and property subject to forfeiture is not vague. Any reasonable person can understand that conduct that gives rise to forfeiture is conduct that violates the Controlled Dangerous Substances Law, and property which is subject to forfeiture is contraband and derivative contraband. See Brown, 648 So.2d 872.
Nor is application of the law ex post facto. It became effective at midnight on December 31, 1989, and the conduct of the claimants in violation of the Forfeiture Act occurred after that date. Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La. 1986).
The cost bond requirements of the statute do not offend the access to courts provision of the Louisiana Constitution. For the same substantive due process issues which we have already discussed earlier in this opinion, the claimants have no fundamental constitutional right to contraband, derivative contraband, or property related to contraband. For that reason the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary. Bazley v. Tortorich, 397 So.2d 475 (La.1981). The imposition of a cost bond on all but pauper claimants seeking return of forfeited property is not an arbitrary exercise of the police power. The bond requirements of the Forfeiture Act do not contravene the access to courts guarantee of our state constitution.
We affirm the judgment of the trial court, at applicants' costs.
AFFIRMED.
THIBODEAUX, J., dissents and will assign reasons.
NOTES
[1] Before the applications could be considered, the judges of this circuit had to determine whether they were civil or criminal in nature because different rules apply, under the Uniform Rules of the Courts of Appeal, depending on whether writ applications are criminal or civil. For example, writ applications that are civil may go to a five-judge panel; writ applications that are criminal never do. Also, the applicants for civil writs are required to pay filing fees; applicants in criminal cases are not. The judges of this circuit met in conference and decided that the applications would be treated as civil. Thereafter, the applications were assigned for consideration to a panel of three judges. A member of that panel recused himself. A reconstituted panel granted writs and ordered the matter docketed, briefed, and argued. The cases were docketed and briefed. Then two members of that panel recused themselves. Further delays were experienced for a panel to emerge that did not include an already recused judge. Finally the matter came to rest in the hands of the current panel, none of whom were on the original panel that granted the writ and ordered the matter docketed, briefed, and argued.