COMMONWEALTH *vs.* ONE 1994 BMW 318 IS AUTOMOBILE.

No. 05-P-1201.

Essex. September 15, 2006. - November 1, 2006.

Present: LENK, BERRY, & KATZMANN, JJ.

*Forfeiture Proceeding. Motor Vehicle,* Forfeiture. *Practice, Civil,* Forfeiture proceeding.

The judge in a forfeiture proceeding determined correctly that the Commonwealth had met its burden of proof under G. L. c. 94C, § 47(*a*)(3), where the facts established that the motor vehicle in question was used to transport cocaine for distribution, and where the vehicle's owner could not avail himself of the "innocent owner" exception to forfeiture provided in G. L. c. 94C, § 47(*c*)(3). [674-677]

CIVIL ACTION commenced in the Superior Court Department on January 19, 2005.

The case was heard by *Howard J. Whitehead,* J.

*Thomas J. Gleason* for the defendant.

*Anita L. Russo,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. John Tricoche, the claimant-owner in this civil action in the nature of an equitable proceeding in rem, appeals from a judgment ordering the forfeiture of his 1994 BMW automobile to the Commonwealth, pursuant to G. L. c. 94C, § 47(*a*). Tricoche claims that the Commonwealth failed to make out a sufficient case for forfeiture because the Commonwealth neither established that the automobile was used in the business of distributing narcotics nor provided prima facie evidence of the involvement of the BMW automobile in distribution on three or more separate dates. We affirm.

The case was submitted to the judge upon agreed facts as follows. The Haverhill police narcotics unit received information that Deborah Costantino, the resident of 134 Summer Street,

apartment 2, in Haverhill, was a cocaine seller. At the direction of the police narcotics unit, Trooper Stephen Gondella went to Costantino's apartment to make an undercover cocaine purchase. Trooper Gondella had with him a sum of marked money provided by the police narcotics unit to make the cocaine purchase.

Trooper Gondella entered Costantino's apartment and had a conversation with her. Costantino stated that she would be willing to sell him cocaine worth one hundred dollars. Trooper Gondella handed Costantino one hundred dollars. Costantino then made a telephone call to an individual whom she identified as her dealer and asked the dealer to deliver the drugs to her apartment. Shortly thereafter, the surveillance team observed John Tricoche operating a dark-colored BMW, which he parked in front of Costantino's apartment building. Tricoche exited the BMW and walked over to the side of Costantino's apartment building. At that time, Costantino informed Trooper Gondella that her dealer had arrived.

Costantino left her apartment and walked outside the building. She proceeded to the same side of the building where Tricoche had gone. Moments later, the surveillance team observed Tricoche jogging back to his BMW, while Costantino walked back inside her apartment building. Surveillance was maintained on Trichoche as he left the area in the BMW. After returning to her apartment, Costantino handed Trooper Gondella two plastic twists containing "crack" cocaine. At that point, Trooper Gondella notified the "Take-Down Team" that the cocaine purchase had been completed.

Tricoche was stopped in his BMW at the intersection of Main Street and Fountain Street in Haverhill. Located in one of Tricoche's pockets was eighty dollars of Trooper Gondella's marked money. Tricoche was placed under arrest, and his BMW was towed to the police station. Costantino was later arrested at her apartment. Tricoche ultimately pleaded guilty to a charge of distributing cocaine.

*Discussion.* General Laws c. 94C, § 47(*a*)(3), as amended by St. 1989, c. 653, § 73, provides that the following are subject to forfeiture: "[a]ll conveyances, including aircraft, vehicles or vessels used, or intended for use, to transport, conceal, or otherwise

facilitate the manufacture, dispensing, distribution of or posses-
sion with intent to manufacture, dispense or distribute, a
controlled substance . . . ." In a forfeiture proceeding, the Com-
monwealth has "the burden of proving to the court the existence
of probable cause [to believe]," G. L. c. 94C, § 47(*d*), as
amended by St. 1989, c. 653, § 79, "that at least on one occasion
the conveyance was used or intended for use in the manner
described in [§ 47](*a*)(3)." *Commonwealth* v. *One 1976 Cadillac
DeVille Auto.*, 380 Mass. 411, 415 (1980). Once the Com-
monwealth demonstrates such probable cause for forfeiture,[1]
"[the] claimant shall then have the burden of proving that the
property is not forfeitable" because it was not used in the manner
alleged. G. L. c. 94C, § 47(*d*). See *Commonwealth* v. *Brown*, 426
Mass. 475, 481 n.7 (1998) (Commonwealth "has the initial
burden of showing the existence of probable cause for forfeiture
of the subject property, after which the burden of proof is on the
claimant of the property to establish that it is not forfeitable").
Even if the property was used in a manner that would subject it
to forfeiture, the claimant may defeat forfeiture by showing that
the use falls within certain specified "exceptions to forfeiture,"
G. L. c. 94C § 47(*d*), including that the use occurred without the
claimant's knowledge. G. L. c. 94C, § 47(*c*)(3).

In this case, the judge determined correctly that the Com-
monwealth had met its burden of proof under § 47(*a*)(3). The
facts establish that the BMW was used to transport cocaine for
distribution. The surveillance team observed Tricoche operating
the BMW and going to and from Costantino's apartment. In ad-
dition, Costantino recognized the BMW when Tricoche parked
it in front of her apartment, and Costantino told the undercover
trooper that her dealer had arrived. Tricoche also had in his pos-
session marked money used by the trooper to purchase the
cocaine. In short, fairly read, the record shows that Tricoche
drove to Costantino's apartment in his BMW in order to
distribute cocaine.

While Tricoche admits that the BMW was used for transport-

---

[1]The Commonwealth's burden is "similar to its burden in seeking an indict-
ment and less than its burden at a probable cause hearing to determine whether
someone should be held for trial." *Commonwealth* v. *Fourteen Thousand Two
Hundred Dollars*, 421 Mass. 1, 9 (1995).

ing narcotics on that one occasion, he argues, citing to G. L. c. 94C, § 47(c)(3),[2] that the judge impermissibly ordered forfeiture of the BMW because the Commonwealth did not prove that the vehicle was "used in the business of distribut-[ing] cocaine," and had not presented prima facie evidence of "business" use by showing involvement in distribution on three or more separate dates. His contentions are not persuasive because G. L. c. 94C, § 47(c)(3), does not apply here.

General Laws c. 94C, § 47(c)(3), which is patterned after the Federal "innocent owner provision," see *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. 369, 373 (1994), creates, as we have noted, an exception to the forfeiture the Commonwealth has the initial burden of establishing. G. L. c. 94C, § 47(d). "The intent of the [forfeiture statute] is to deprive criminals of the tools by which they conduct their illegal activities . . . ." *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, *supra* at 374, quoting from *United States* v. *Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio*, 866 F.2d 213, 217 (6th Cir. 1989). At the same time, reflecting a concern that drug-related forfeiture laws not be "used to take away the property of innocent third parties," or, for example, to penalize the "owner of an automobile [who] was an unwitting participant," *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 541 (1992), the "innocent owner" provision — G. L. c. 94C, § 47(c)(3) — permits a claimant to rebut forfeiture by presenting evidence to show absence of knowledge. Here, not only did Tricoche fail to present any evidence of absence of

---

[2]General Laws c. 94C, § 47(c)(3), as amended by St. 1989, c. 653, § 78, provides:

> "No conveyance . . . shall be subject to forfeiture unless the owner thereof knew or should have known that such conveyance or real property was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances. Proof that the conveyance or real property was used to facilitate the unlawful dispensing, manufacturing, or distribution of, or possession with intent unlawfully to manufacture, dispense, or distribute, controlled substances on three or more different dates shall be prima facie evidence that the conveyance or real property was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances."

knowledge so as to trigger § 47(c)(3), cf. *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. at 536 (claimant opposing summary judgment motion seeking forfeiture must set forth specific facts and may not rest on mere allegations or denials in pleadings), but the undisputed facts in the record show that Tricoche knowingly used the automobile to "transport, conceal, or otherwise facilitate . . . the distribution of . . . a controlled substance." G. L. c. 94C, § 47(a)(3). Contrary to the defendant's assertions, § 47(a)(3) does not require that the vehicle be used in an ongoing distribution "business" to be subject to forfeiture. In sum, Tricoche has not presented any facts or argument that would suggest that the "innocent owner" provision has any application here. The Commonwealth met its burden of proof to support the forfeiture.

*Judgment affirmed.*